UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

_____
)
UNITED STATES OF AMERICA,   )
)
Plaintiff,   )          No. 3:21-CV-5672
)
v.   )
)
Gardner-Fields, Inc.   )
and Gardner-Gibson, Inc.   )          CIVIL COMPLAINT
)
)
Defendants.   )
_____)

## **COMPLAINT**

Plaintiff, the United States of America, by the authority of the Attorney General of the

United States, through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency (EPA), files this Complaint and alleges the

following:

## I.   **PRELIMINARY STATEMENT**

1.      This is a civil action brought pursuant to the Clean Water Act (CWA),

33 U.S.C. § 1251 et seq., against Gardner-Fields, Inc. and Gardner-Gibson, Inc. (collectively,

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
1

1    Gardner or Defendants), seeking civil penalties arising from Defendants' discharge of

2    petroleum-based liquid asphalt from its facility in Tacoma, Washington (Facility) into or upon

3    the navigable waters of the United States and/or adjoining shorelines and violations of the

4    CWA's Spill Prevention, Control and Countermeasures regulations discovered during two

5    subsequent inspections of the Facility.

6                    **II.    <u>JURISDICTION, VENUE AND AUTHORITY</u>**

7            2.      This Court has jurisdiction over the subject matter of this action pursuant to

8    Sections 309(b), 311(b)(7)(E), and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E),

9    and 1321(n); and 28 U.S.C. §§ 1331, 1345, and 1355.  The Court has personal jurisdiction

10   over the Parties.

11           3.      Venue is proper in this judicial district pursuant to Section 311(b)(7)(E) of the

12   CWA, 33 U.S.C. § 1321(b)(7)(E), and pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a)

13   because Defendants are doing business within the district and a substantial part of the events

14   giving rise to the claims occurred within the district.

15           4.      Authority to bring this action is vested in the United States Department of

16   Justice pursuant to Section 506 of the CWA, 33 U.S.C. § 1366.

17                           **III.    <u>PARTIES</u>**

18           5.      Plaintiff is the United States of America, acting at the request of EPA, an

19   agency of the United States.

20           6.      Defendant Gardner-Fields, Inc., a corporation organized under the laws of the

21   State of Delaware, operates the asphalt and coating materials Facility described in Paragraph

22   1, above.

Civil Complaint                              UNITED STATES DEPARTMENT OF JUSTICE
*United States v. Gardner-Fields, Inc., et al.*   Environment and Natural Resources Division
                                             P.O. Box 7611, Washington DC 20044-7611
                                             (202) 305-0302
                                             2

1    7.    Defendant Gardner-Gibson, Inc., a corporation based out of Tampa, Florida

2    and organized under the laws of the State of Delaware, owns the Facility described in

3    Paragraph 1, above.

4              **IV.    STATUTORY AND REGULATORY FRAMEWORK**

5    8.    The Clean Water Act is designed to restore and maintain the chemical,

6    physical, and biological integrity of the nation's waters.  33 U.S.C. § 1251(a).

7    **A.  Discharge Violations**

8    9.    Section 311(b) of the CWA, 33 U.S.C. § 1321(b), prohibits the discharge of

9    oil or hazardous substances into or upon the navigable waters of the United States or adjoining

10   shorelines in such quantities as the President determines may be harmful to the public health

11   or welfare or environment of the United States.

12   10.    Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2), defines "discharge" to

13   include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping," except as

14   specifically excluded therein.

15   11.    Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1), and 40 C.F.R. § 112.2

16   define "oil" to mean "oil of any kind or in any form," including petroleum-based asphalt. 67

17   Fed. Reg. 47075 (July 17, 2002).

18   12.    Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters"

19   as "the waters of the United States, including the territorial seas."

20   13.    In turn, "waters of the United States" have been defined to include, among

21   other things, all waters which are currently used, were used in the past, or may be susceptible

22   to use in interstate or foreign commerce, including all waters which are subject to the ebb and

23   flow of the tide, and tributaries to such waters. See, e.g., 40 C.F.R. § 110.1 (1993).  See also

24   40 C.F.R. § 112.2 (1973).

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302

1    14.    Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA,

2    acting through its delegated authority under Executive Order No. 11,735, 38 Fed. Reg. 21,243

3    (Aug. 7, 1973) and Executive Order No. 12,777, 56 Fed. Reg. 54,757 (Oct. 18, 1991), has

4    determined by regulation that discharges of oil in such quantities as may be harmful to the

5    public health or welfare or environment of the United States include discharges of oil that "(a)

6    [v]iolate applicable water quality standards; or (b) [c]ause a film or sheen upon or

7    discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion

8    to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. §

9    110.3.

10    15.    Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), provides that

11    any person who is the owner, operator, or person in charge of an onshore facility from which

12    oil is discharged in violation of Section 311(b)(3) of the CWA shall be subject to a civil

13    penalty.

14    16.    Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7), defines "person" to

15    include corporations.

16    17.    Section 311(a)(6), 33 U.S.C. § 1321(a)(6), defines "owner or operator" to

17    include "any person owning or operating [an] onshore facility . . ."

18    18.    Section 311(a)(10), 33 U.S.C. § 1321(a)(10), defines "onshore facility" to

19    mean a facility of "any kind located in, on, or under, any land within the United States, other

20    than submerged land."

21    19.    Pursuant to Section 311(b)(7)(A) of the CWA and 40 C.F.R. § 19.4, Table 2,

22    each violation of Section 311(b)(3) of the CWA occurring after December 6, 2013 through

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
4

1    November 2, 2015, is subject to a civil penalty of up to $37,500 per day or up to $2,100 per

2    barrel of oil discharged.

3    **B.        SPCC and FRP Regulations**
4
5        20.     Section 311(j) of the CWA, 33 U.S.C. § 1321(j), provides for the regulation of

6    onshore facilities to prevent and contain discharges of oil. Specifically, Section 311(j)(l)(C) of

7    the CWA, 33 U.S.C. § 1321(j)(l)(C), provides that the President shall issue regulations to

8    establish procedures, methods, and equipment to prevent discharges of oil from onshore

9    facilities and to contain such discharges if they do occur.

10       21.     Initially by Executive Order 11,548 (July 20, 1970), 35 Fed. Reg. 11677 (July

11   22, 1970), and most recently by Section 2(b)(l) of Executive Order 12,777 (October 18, 1991),

12   56 Fed. Reg. 54757 (October 22, 1991), the President delegated to EPA this Section

13   311(j)(1)(C) authority to issue the regulations referenced in the preceding Paragraph for non-

14   transportation-related onshore facilities.

15       22.     Pursuant to this delegated statutory authority and its authorities under the

16   CWA, 33 U.S.C. § 1251 et seq., to implement Section 311(j), EPA promulgated such

17   regulations, including the Spill Prevention, Control, and Countermeasure Regulations (SPCC

18   Regulations), which are codified at 40 C.F.R. § 112.1-12, and the Facility Response Plan

19   Regulations (FRP Regulations), which are codified at 40 C.F.R. §§ 112.20-21.

20       23.     The SPCC Regulations apply to any owner and operator of a non-

21   transportation-related onshore facility that is engaged in, among other things, storing or

22   distributing oil or oil products, which due to its location, could reasonably be expected to

23   discharge oil in quantities that may be harmful into or upon the navigable waters of the United

1   States or adjoining shorelines, and that has oil in, among other things, any aboveground

2   container.  See 40 C.F.R. § 112.1(b).

3   24.   The SPCC Regulations define "person" to include corporations. 40 C.F.R.

4   § 112.2.

5   25.   The SPCC Regulations define "onshore facility" to mean any facility of any

6   kind located in, on, or under, any land within the United States other than submerged lands.

7   40 C.F.R. § 112.2.

8   26.   In the case of an onshore facility, the SPCC Regulations define "owner or

9   operator" to include any person owning or operating such onshore facility. 40 C.F.R. § 112.2.

10   27.   The SPCC Regulations define "oil" to mean oil of any kind or in any form,

11   including, but not limited to, vegetable oils, petroleum, fuel oil, sludge, synthetic oils, oil

12   refuse, and oil mixed with wastes other than dredged spoil. 40 C.F.R. § 112.2.

13   28.   "Non-transportation-related," as applied to an onshore facility is defined to

14   include industrial or commercial facilities which use and store oil, but excluding any terminal

15   facility, unit, or process integrally associated with the handling or transferring of oil in bulk to

16   or from a vessel. 40 C.F.R. § 112.2, App. A (Memorandum of Understanding Between the

17   Secretary of Transportation and the Administrator of the Environmental Protection Agency).

18   29.   Pursuant to the SPCC Regulations, the owner or operator of an onshore

19   facility that has an above ground storage capacity of more than 1,320 gallons of oil, and which

20   due to its location, could reasonably be expected to discharge oil in quantities that may be

21   harmful into or upon the navigable waters of the United States or adjoining shorelines, must

22   prepare and implement a Spill Prevention, Control and Countermeasure Plan (SPCC Plan) that

23   adheres to certain requirements as detailed in the SPCC Regulations.  40 C.F.R. § 112.7.

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
6

1        30.     A facility's SPCC Plan must include a discussion of the facility's

2    conformance with the requirements detailed in the SPCC Regulations, 40 C.F.R.

3    § 112.7(a)(1), including in part relevant to this Complaint:

4              a.    Where experience indicates a reasonable potential for equipment failure,

5    the SPCC Plan must include a prediction of the direction, rate of flow, and total quantity of oil

6    which could be discharged from the facility as a result of each type of major equipment failure

7    (40 C.F.R. § 112.7(b));

8              b.    Appropriate containment and/or diversionary structures or equipment (40

9    C.F.R. § 112.7(c));

10            c.    Inspections and tests in accordance with written procedures and records

11    for each inspection and test (40 C.F.R. § 112.7(e));

12            d.    Procedures for facility tank car and tank truck loading and unloading (40

13    C.F.R. § 112.7(h)); and

14            e.    Evaluation of containers for risk of discharge or failure due to brittle

15    fracture or other catastrophe (40 C.F.R. § 112.7(i)).

16        31.     In addition to the general requirements in Paragraph 30 above, the owner and

17    operator of an onshore facility must create its SPCC Plan to meet specific discharge

18    prevention and containment procedures, 40 C.F.R. § 112.8, including in part relevant to this

19    Complaint:

20            a.    Adequate facility drainage, and the use of valves to restrain drainage from

21    diked storage areas (40 C.F.R. § 112.8(b);

22            b.    Adequate construction of bulk storage containers and corresponding

23    secondary containment (40 C.F.R. § 112.8(c)(2));

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
7

1              c.    Proper design and protocols for uncontaminated rainwater bypass valves

2      (40 C.F.R. § 112.8(c)(3));

3              d.    Periodic integrity testing of aboveground bulk storage containers and

4      retention of documentation related thereto, including comparison records, and determination,

5      in accordance with industry standards, of the appropriate qualifications for personnel

6      performing tests and inspections (40 C.F.R. § 112.8(c)(6));

7              e.    Adequate design and testing of overfill prevention measures, including

8      liquid level sensing devices, to avoid discharges (40 C.F.R. § 112.8(c)(8));

9              f.    Observation of the facility's effluent treatment facilities frequently enough

10     to detect possible system upsets that could cause a discharge (40 C.F.R. § 112.8(c)(9));

11             g.    Prompt correction of visible discharges which result in a loss of oil from a

12     container, including removal of any accumulations of oil (40 C.F.R. § 112.8(c)(10)); and

13             h.    Position or locate mobile or portable oil storage containers to prevent a

14     discharge and furnish a secondary means of containment sufficient to contain the capacity of the

15     largest single compartment or container with sufficient freeboard to contain precipitation (40

16     C.F.R. § 112.8(c)(11)).

17         32.    The FRP Regulations require that certain owners and operators prepare,

18     implement, and submit to EPA a Facility Response Plan (FRP) for responding to a worst case

19     discharge of oil or hazardous substances and to a substantial threat of such a discharge.  40

20     C.F.R. §§ 112.1 and 112.20.

21         33.    Pursuant to the FRP Regulations, owners and operators of non-transportation-

22     related-onshore facilities that, because of its location, could reasonably be expected to cause

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
8

1    substantial harm to the environment by discharging oil into or on the navigable waters or

2    adjoining shorelines shall prepare and submit an FRP to EPA. 40 C.F.R. §112.20(a).

3         34.    A facility could, because of its location, reasonably be expected to cause

4    substantial harm to the environment by discharging oil into or on the navigable waters or

5    adjoining shorelines if its total oil storage capacity is greater than or equal to one million

6    gallons, and, the facility, among other things, has had a reportable oil discharge in an amount

7    greater than or equal to 10,000 gallons within the last five years. 40 C.F.R. §

8    112.20(f)(1)(ii)(D).

9         35.    Pursuant to Section 311(b)(7)(C) of the CWA, and 40 C.F.R. § 19.4, (Tables 1

10   and 2), each violation of Section 311(j) of the CWA occurring after December 6, 2013

11   through November 2, 2015, is subject to a civil penalty of up to $37,500 per day, and $48,762

12   per day for each violation occurring thereafter. 40 C.F.R. § 19.4.

13                        **V.     FACTUAL ALLEGATIONS**

14   **A.     The Facility**

15

16        36.    At all times relevant to this action, Defendants owned and/or operated the

17   Facility.

18        37.    The Facility is located at 2240 Taylor Way, Tacoma, Washington 98421.

19        38.    The Facility manufactures and warehouses roofing and waterproofing

20   products composed of asphalt and other coating materials. The Facility's primary Standard

21   Industrial Classification (SIC) code is 29520000 (Asphalt Felts and Coatings) and primary

22   NAICS code is 324122 (Asphalt Shingle and Coating Materials Manufacturing).

23        39.    The Facility has a total above-ground oil storage tank capacity of over 4.2

24   million gallons.

Civil Complaint                              UNITED STATES DEPARTMENT OF JUSTICE
*United States v. Gardner-Fields, Inc., et al.*   Environment and Natural Resources Division
                                             P.O. Box 7611, Washington DC 20044-7611
                                             (202) 305-0302

40.     The Facility has a total of thirty bulk storage containers and approximately twenty-three operational tanks (mixing tanks, dispensing tanks, water tanks, etc.) that are used for storing and mixing petroleum-related products, water, and associated additives.

41.     The oil storage tanks are located in several different outdoor tank "farms," including the Still Yard Tank Farm and the Large Storage Tank Area.

42.     The Large Storage Tank Area, located in the western portion of the Facility, houses of two storage tanks, Tank 61 and Tank 62, each with a capacity of 1.7 million gallons.

43.     Raw asphalt is received by rail cars via two rail spurs along the western side of the Facility. Asphalt is delivered from the rail cars to the Large Storage Tank Area via above-ground transfer piping.

44.     The Still Yard Tank Farm includes twenty storage tanks that hold both asphalt and mineral spirits.

45.     Asphalt and mineral spirits are received by tanker trucks at the truck offloading area in the northern part of the Facility.  Asphalt is delivered from tanker trucks to the Still Yard Tank Farm via above-ground transfer piping.

46.     Each tank "farm" has secondary containment. The total net storage capacity for secondary containment in the Large Storage Tank Area is two million gallons.

47.     The majority of the containment area for the Large Storage Tank Area drains via surface flow to an oil water separator.  There are two storm water catch basins in the containment area, each of which is controlled by a valve that is to be maintained in the closed position whenever the Facility is not actively draining stormwater.

48.     All valves in the stormwater catch basins are manually operated. The valves in the Large Storage Tank Area drain to two outfalls designated Outfall 2 and Outfall 3. Outfalls

1    2 and 3 are point sources within the meaning of Section 502(14) of the CWA, 33 U.S.C.

2    § 1362(14).

3    **B.       The Connection to the Puget Sound**
4
5          49.     Outfalls 2 and 3 discharge into a channel ("Lincoln Avenue Ditch") that runs

6    west toward Lincoln Avenue.

7          50.     The Lincoln Avenue Ditch flows northwesterly before making a ninety-degree

8    turn to the southwest, running parallel to Lincoln Avenue before flowing to the Blair

9    Waterway approximately 2400 feet downstream of the Facility. The Blair Waterway flows to

10   Commencement Bay and Puget Sound.

11         51.     The Lincoln Avenue Ditch has a continuous flow to the Blair Waterway on at

12   least a seasonal basis, including during the driest summer months.  The Lincoln Avenue Ditch

13   is therefore a tributary of the Blair Waterway.

14         52.     The Blair Waterway is subject to the ebb and flow of the tide and currently

15   supports navigation. The Blair Waterway is therefore a traditional navigable water.

16         53.     The Lincoln Avenue ditch is and was a "water of the United States" and

17   "navigable water" within the meaning of the CWA and applicable regulations.

18   **C.       The Spill**
19
20         54.     On or about February 8, 2015, Facility personnel were engaged in pumping

21   petroleum-based asphalt from three rail cars, via a four inch above-ground pipeline, into the

22   Tank 61 storage tank.

23         55.     During the process of pumping asphalt between the rail cars and Tank 61 in

24   the Large Storage Tank Area, a flexible connection in the above-ground piping between Tank

1    61 and Tank 62 failed, causing asphalt to overflow the oil water separator in the Facility's

2    secondary containment.

3        56.     On or about February 8, 2015, Facility personnel left the valve to Outfall 3 in

4    the open position and asphalt escaped secondary containment through the open valve. Asphalt

5    flowed into the Lincoln Avenue Ditch and upon its adjoining shorelines.

6        57.     The asphalt flowed approximately six hundred feet down the Lincoln Avenue

7    Ditch toward the Blair Waterway, causing a film or sheen upon the surface of the water in the

8    channel and on its adjoining shorelines. A boom and sorbent were placed to prevent any sheen

9    coming off of the asphalt from migrating further down the channel.

10       58.     Facility Personnel did not discover that the flexible connection had failed nor

11   that the valve to Outfall 3 had been left open until they unloaded all three rail cars, which

12   carried a total volume of approximately 71,000 gallons of asphalt.

13       59.     On April 8, 2015, Defendants provided the Washington Department of

14   Ecology with a Volume Estimation Worksheet that estimated that 60,000 gallons of asphalt

15   from the spill discharged from the Facility's secondary containment.

16       60.     Defendants had a reportable oil discharge in an amount greater than or equal

17   to 10,000 gallons. Defendants have never prepared, implemented, or submitted to EPA an

18   FRP for the Facility.

19       61.     On August 6, 2015, EPA conducted an inspection at the Facility to determine

20   the Facility's compliance with the SPCC Regulations and the CWA.

21       62.     Defendants provided EPA with a copy of an SPCC Plan dated November 2011

22   and other information relevant to their compliance with the requirements of the SPCC

23   Regulations.

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
12

1        63.      The August 6, 2015 inspection and review of Defendants' November 2011

2    SPCC Plan revealed multiple violations of the SPCC Regulations. Specific violations of the

3    SPCC Regulations are described in Table 1, attached to this Complaint.

4        64.      On June 9, 2021, EPA conducted a second inspection at the Facility to

5    determine the Facility's compliance with the SPCC Regulations and the CWA.

6        65.      Defendants provided EPA with a copy of an SPCC Plan dated May 24, 2021

7    and other information relevant to their compliance with the requirements of the SPCC

8    Regulations.

9        66.      The June 9, 2021 inspection and review of Defendants' May 24, 2021 SPCC

10    Plan revealed additional violations of the SPCC Regulations. Specific violations of the SPCC

11    Regulations are described in Table 2, attached to this Complaint.

12                         **FIRST CLAIM FOR RELIEF**

13

14    **Discharge of Oil to Navigable Waters in Violation of Section 311(b) of the Clean Water Act**

15

16        67.      Paragraphs 1 through 66 are incorporated herein by reference.

17        68.      On or about February 8, 2015, Defendants discharged approximately 60,000

18    gallons of oil, in the form of petroleum-based asphalt, to the Lincoln Avenue Ditch.

19        69.      Defendants are persons that own and/or operate an onshore facility from

20    which oil was discharged to navigable waters in violation of Section 311(b)(3) of the CWA,

21    33 U.S.C. § 1321(b)(3).

22        70.      Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A) and

23    40 C.F.R. § 19.4 (Table 1), Defendants are jointly and severally liable for a civil penalty of up

24    to $2,100 per barrel of oil discharged.

25                         **SECOND CLAIM FOR RELIEF**

26

Civil Complaint                   UNITED STATES DEPARTMENT OF JUSTICE
*United States v. Gardner-Fields, Inc., et al.*    Environment and Natural Resources Division
                                   P.O. Box 7611, Washington DC 20044-7611
                                   (202) 305-0302

1     **Failure to Comply with SPCC Regulations in Violation of Section 311(j) of the CWA**

2

3        71.      Paragraphs 1 through 66 are incorporated herein by reference.

4        72.      The Facility is a "non-transportation related" "onshore facility" that is

5 engaged in storing and distributing "oil" or oil products and has an above-ground storage

6 capacity greater than 1,320 gallons.

7        73.      A discharge of oil from the Facility could reasonably be expected to discharge

8 oil in quantities that may be harmful into or upon the navigable waters of the United States or

9 adjoining shorelines within the meaning of 40 C.F.R. § 112.1(b).

10        74.      Defendants are required to prepare, implement, and maintain an SPCC Plan

11 for the Facility that complies with all applicable requirements set forth in the SPCC

12 Regulations codified at 40 C.F.R. §§ 112.1-12.

13        75.      Defendants failed to comply with the requirements of the CWA and the SPCC

14 Regulations promulgated thereunder by failing to prepare and implement an SPCC Plan in

15 accordance with good engineering practices and failing to implement certain required spill

16 prevention measures, in violation of 40 C.F.R. §§ 112.7 and 112.8. Specifically, Defendant

17 failed to implement the SPCC Regulations detailed in Table 1 and Table 2, attached to this

18 Complaint.

19        76.      Pursuant to Section 311(b)(7)(C) of the Clean Water Act, 33 U.S.C.

20 § 1321(b)(7)(c) and 40 C.F.R. Part 19.4 (Tables 1 and 2),  Defendants are jointly and severally

21 liable for penalties at the Facility in an amount up to $37,500 per day for each violation that

22 occurred after January 12, 2009, through November 2, 2015, and $48,762 per day for each

23 violation occurring thereafter.

24

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
14

1                                **THIRD CLAIM FOR RELIEF**

2

3       **Failure to Comply with FRP Regulations in Violation of Section 311(j) of the CWA**

4

5           77.      Paragraphs 1 through 66 are incorporated herein by reference.

6           78.      The Facility is a "non-transportation related" "onshore facility" that, because

7 of its location, could reasonably be expected to cause substantial harm to the environment by

8 discharging oil into or on the navigable waters or adjoining shorelines within the meaning of

9 40 C.F.R. §§ 112.1(b), 112.20(a), and 112.20(f)(1)(ii)(D).

10           79.      Pursuant to 40 C.F.R. § 112.20(f)(1)(ii)(D), between on or about February 8,

11 2015 and February 8, 2020, Defendant was required to prepare, implement, and submit to

12 EPA an FRP for responding to a worst case discharge of oil or hazardous substances, and to a

13 substantial threat of such a discharge, that conforms with applicable requirements set forth in

14 the FRP Regulations codified at 40 C.F.R. § 112.20-21.

15           80.      Defendants failed to prepare, implement, and submit to EPA an FRP, in

16 violation of the FRP Regulations set forth in 40 C.F.R. § 112.20-21.

17           81.      Pursuant to Section 311(b)(7)(C) of the Clean Water Act, 33 U.S.C.

18 § 1321(b)(7)(c) and 40 C.F.R. Part 19.4 (Tables 1 and 2), Defendants are jointly and severally

19 liable for penalties in an amount up to $37,500 per day for each violation that occurred after

20 January 12, 2009, through November 2, 2015, and $48,762 per day for each violation

21 occurring thereafter.

22                                  **PRAYER FOR RELIEF**

23           WHEREFORE, Plaintiff respectfully prays that this Court:

24 A.      Assess against Defendants a civil penalty, and enter a judgment against Defendants,

25 jointly and severally, and in favor of the United States, in an amount up to the applicable amount

Civil Complaint                            UNITED STATES DEPARTMENT OF JUSTICE
*United States v. Gardner-Fields, Inc., et al.*      Environment and Natural Resources Division
                                      P.O. Box 7611, Washington DC 20044-7611
                                      (202) 305-0302

1    set forth at 40 C.F.R. § 19.4 per barrel of oil for each violation of Section 311(b)(3) of the CWA,

2    33 U.S.C. § 1321(b)(3), and per day for each violation of Section 311(b)(7)(C) of the CWA, 33

3    U.S.C. § 1321(b)(7)(C); and

4    B.      Grant such other relief as this Court may deem just and proper.

5                                          Respectfully submitted,

6                                          TODD KIM
7                                          Assistant Attorney General
8                                          Environment and Natural Resources Division
9                                          U.S. Department of Justice
10
11
12                                         /s/
13                                         JOHN BRODERICK
14                                         Trial Attorney
15                                         Environment and Natural Resources Division,
16                                         Environmental Enforcement Section
17                                         United States Department of Justice
18                                         P.O. Box 7611
19                                         Washington, D.C. 20044-7611
20                                         (202) 305-0302
21                                         John.Broderick@usdoj.gov
22
23                                         TESSA M. GORMAN
24                                         Acting United States Attorney
25                                         Western District of Washington
26
27                                         BRIAN KIPNIS
28                                         Assistant United States Attorney
29                                         Western District of Washington
30
31   Of Counsel:
32
33   Caitlin M. Soden
34   Assistant Regional Counsel
35   Office of Regional Counsel
36   U.S. Environmental Protection Agency, Region 10
37
38

Civil Complaint                          UNITED STATES DEPARTMENT OF JUSTICE
*United States v. Gardner-Fields, Inc*., *et al.*   Environment and Natural Resources Division
                                         P.O. Box 7611, Washington DC 20044-7611
                                         (202) 305-0302
                                         16

1
2
3

**TABLE 1**
**SPCC Violations, August 6, 2015 Inspection**

| Failure to provide appropriate information in the SPCC Plan about equipment to prevent a discharge, in violation of 40 C.F.R. § 112.7(a)(1) and 112.7(c). |
|---|
| Failure to identify in the SPCC Plan the maximum capacity of any truck that is loaded or unloaded at the truck loading rack to show conformance with the design requirements in Section 112.7(h)(1), in violation of 40 C.F.R. § 112.7(a)(1) and 112.7(h)(1). |
| Failure to include in the SPCC Plan an instruction that prior to the filling and departure of any tank truck or tank car, employees must closely inspect such vehicles for discharges, in violation of 40 C.F.R. § 112.7(a)(1) and 112.7(h)(3). |
| Failure to adequately describe facility drainage in the SPCC Plan, in violation of 40 C.F.R. §§ 112.7(a)(1), and 112.8(b)(1) and (b)(2). |
| Failure to provide secondary containment for the entire capacity of the largest single container and sufficient freeboard to contain precipitation, in violation of 40 C.F.R. §§ 112.7(a)(1) and 112.8(c)(2). |
| Failure to include in the SPCC Plan a prediction of the rate of flow of oil which could be discharged from the facility as a result of failures in above-ground storage tanks and transfer areas, in violation of 40 C.F.R. § 112.7(b). |
| Failure to provide appropriate containment in the walls for the Still Yard Tank Farm and Large Storage Tank Area and in the berms for the railcar unloading area, so as to prevent a discharge, in violation of 40 C.F.R. § 112.7(c). |
| Failure to conduct, and maintain records for, inspections and tests, in violation of 40 C.F.R. §§ 112.7(e), 112.8(c)(6). |
| Failure to include in the SPCC Plan the proper citation to industry standards for evaluating containers for risk of discharge or failure due to brittle fracture or other catastrophe, in violation of 40 C.F.R. § 112.7(i). |
| Failure in the SPCC Plan to address uncontaminated rainwater bypass protocols, in violation of 40 C.F.R. § 112.8(c)(3). |
| Failure to address in the SPCC Plan regular testing and calibration of liquid level sensing devices, in violation of 40 C.F.R. § 112.8(c)(8). |
| Failure to discuss in the SPCC Plan a schedule for observing each effluent treatment facility frequently enough to detect possible system upsets that could cause a discharge, in violation of 40 C.F.R. § 112.8(c)(9). |
| Failure to promptly correct multiple visible oil discharges, in violation of 40 C.F.R. § 112.8(c)(10). |

4
5
6
7
8

Civil Complaint
*United States v. Gardner-Fields, Inc., et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302
17

1

**TABLE 2**

2

**SPCC Violations, June 9, 2021 Inspection**

| |
|---|
| Failure in the SPCC Plan to describe or delineate the loading rack and how the facility complies with the requirements listed in Section 112.7(h)(1)-(3), in violation of 40 C.F.R. § 112.7(a)(1) and 112.7(h). |
| Failure to describe or address in the SPCC Plan the appropriate qualifications for personnel performing tests and inspections and the need to maintain comparison records, in violation of 40 C.F.R. §§ 112.7(a)(1) and 112.8(c)(6). |
| Failure to describe with specificity in the SPCC Plan how overfill prevention measures and liquid level sensing devices are used, in violation of 40 C.F.R. §§ 112.7(a)(1) and 112.8(c)(8). |
| Failure to promptly correct visible discharges and to promptly remove accumulations of oil in diked areas, including a leak and resulting asphalt spill underneath the truck rack piping, in violation of 40 C.F.R. § 112.8(c)(10). |
| Failure to describe in the SPCC Plan the secondary containment volumes for mobile and portable containers and whether the secondary means of containment is sufficient to contain the capacity of the largest single compartment or container with sufficient freeboard to contain precipitation, in violation of 40 C.F.R. §§ 112.7(a)(1) and 112.8(c)(11). |

3

Civil Complaint
*United States v. Gardner-Fields, Inc*., *et al.*

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington DC 20044-7611
(202) 305-0302